**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JEFFREY J.[1],                                    Case No. 1:20-cv-724
     Plaintiff,                              Litkovitz, M.J.

     vs.

COMMISSIONER OF                              **ORDER**
SOCIAL SECURITY,
     Defendant.

Plaintiff Jeffrey J. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for supplemental security income ("SSI"). This matter is before the Court on plaintiff's Statement of Errors (Doc. 14)[2], the Commissioner's response in opposition (Doc. 17), and plaintiff's reply memorandum (Doc. 18).

## I. Procedural Background

Plaintiff protectively filed his application for SSI on March 10, 2017, alleging disability since July 31, 2008[3], due to two dislocated discs, depression, fluid on the knees, hearing loss, scoliosis, hypertension, and back pain. (Tr. 235). The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Thuy-Anh Nguyen. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing on July 25, 2019. On November 4, 2019, the ALJ

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

[2] Plaintiff filed a Statement of Errors exceeding twenty pages without first obtaining leave of the Court. (Doc. 14). This violates the undersigned's Standing Order. (*See* Standing Order on Civil Procedures, I.G). In the interest of expediency, the Court will proceed with the memoranda as filed. Counsel is advised, however, that compliance will be enforced in future cases.

[3] Plaintiff amended his alleged onset date to March 10, 2017. (Tr. 16, 224).

issued a decision denying plaintiff's SSI application.  This decision became the final decision of the Commissioner when the Appeals Council denied review on July 21, 2020.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920 (b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] has not engaged in substantial gainful activity since March 10, 2017, the application date (20 CFR 416.971 *et seq.*).

> 2. The [plaintiff] has the following severe impairments: osteoarthritis of the right knee and bilateral hips; lumbar degenerative disc disease; and scoliosis of [the] lumbar spine (20 CFR 416.920(c)).

> 3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

> 4. After careful consideration of the entire record, [the ALJ] finds that the [plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except as follows: the [plaintiff] could frequently climb ramps and stairs, but only occasionally climb ladders, ropes, and scaffolds. He could frequently stoop, crawl, and kneel. The [plaintiff] is limited to frequent operation of foot pedals with the right lower extremity and frequent pushing and/or pulling with the right lower extremity.

> 5. The [plaintiff] is capable of performing past relevant work as a security guard. This work does not require the performance of work-related activities precluded by the [plaintiff]'s residual functional capacity (20 CFR 416.965).

> 6. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since March 10, 2017, the date the application was filed (20 CFR 416.920(f)).

(Tr. 18-29).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*,

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

(1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In

deciding whether the Commissioner's findings are supported by substantial evidence, the Court

considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination.  Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right."  *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

### D.  Specific Errors

On appeal, plaintiff alleges that the ALJ erred by failing to (1) find plaintiff's depressive

disorder or borderline intellectual functioning severe impairments at Step Two of the sequential

evaluation process, and (2) properly evaluate the medical opinions of record.  (Doc. 14).   In

response, the Commissioner argues that the ALJ properly determined that plaintiff's depressive

4

disorder and borderline intellectual functioning were not severe impairments, and the ALJ's weighing of various medical opinions of record was supported by substantial evidence. (Doc. 17).

### 1. The ALJ's Step Two finding was not supported by substantial evidence.

In his first assignment of error, plaintiff alleges the ALJ erred by not finding plaintiff's "depressive disorder or his borderline intellectual functioning to constitute 'severe' impairments" at Step Two of the sequential evaluation process. (Doc. 14 at PAGEID 780). Plaintiff argues that the ALJ's Step Two finding is not supported by substantial evidence because "all three of the state agency's psychologists, Drs. Nelson, Zeune and Tishler, opined that these two mental impairments, when considered in combination, did impose rather significant limitations on Mr. J[]'s ability to perform basic work activities." (*Id.*) (emphasis in original).

The Commissioner argues that "substantial evidence supports the ALJ's finding that Plaintiff did not have a severe mental impairment at step two." (Doc. 17 at PAGEID 824).

The regulations define a severe mental impairment as one that significantly limits the mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Plaintiff is not required to establish total disability at this level of the sequential evaluation process. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Sec'y of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920

(11th Cir. 1984)). The severity requirement is a "*de minimis* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

An ALJ's failure to find a severe impairment where one exists may not constitute reversible error where the ALJ finds that the claimant "has at least one other severe impairment and continues with the remaining steps of the disability evaluation." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 326 (6th Cir. 2015) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). "This rule is predicated on the notion that the ALJ 'properly could consider [the] claimant's [non-severe impairments] in determining whether [the] claimant retained sufficient residual functional capacity to allow [him] to perform substantial gainful activity." *Id.* (quoting *Maziarz*, 837 F.2d at 244). The Court must consider whether the ALJ "'consider[ed] limitations and restrictions imposed by all of [the claimant]'s impairments,' including his non-severe impairments, in the remaining steps of the disability determination." *Fisk v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5). In other words, where the ALJ considers the "non-severe" impairments when determining the claimant's RFC, "'it is unnecessary to decide' whether the ALJ erred in classifying the impairments as non-severe at step two." *Fisk*, 253 F. App'x at 584 (citing *Maziarz*, 837 F.2d at 244).

Here, substantial evidence does not support the ALJ's determination that plaintiff's mental impairments, i.e., depression and borderline intellectual functioning, were not severe. The record as a whole, including the evidence from Drs. W. Michael Nelson, Courtney Zeune, Carl Tishler, and Andrew Welch, supports the conclusion that plaintiff's depression and borderline intellectual functioning constitute more than a "slight abnormality" having more than a "minimal effect" on plaintiff's work abilities. *Farris*, 773 F.2d at 90.

6

Dr. Nelson consultatively examined plaintiff on May 31, 2017.  (Tr. 374-80).  Plaintiff indicated that he was "seeking benefits for himself because 'I have a dislocated disc in my back and scoliosis and fluid on my knee and some slight mental issues."  (Tr. 374).  Plaintiff stated his physician "wanted him to talk to a psychiatrist to possibly be prescribed some type of antidepressant medications," but plaintiff had "not yet done this."  (*Id*.).  Dr. Nelson diagnosed an unspecified depressive disorder and estimated plaintiff's intelligence as borderline to possibly low-average range.  (Tr. 378-79).

Thereafter, state agency psychologist Dr. Zeune concluded that plaintiff was moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and respond appropriately to changes in the work setting.  (Tr. 97-99).  Dr. Zeune determined that plaintiff's depression and borderline intellectual functioning were "severe" medically determinable impairments.  (Tr. 95).  State agency psychologist Dr. Tishler reviewed plaintiff's file upon reconsideration on January 18, 2018 and affirmed Dr. Zeune's findings that plaintiff's depression and borderline intellectual functioning were "severe" medically determinable impairments.  (Tr. 103-19).  The state agency reviewing psychologists opined that plaintiff was able to perform short repetitive tasks in a setting with flexible pace and production requirements, was able to adapt to occasional minor changes in routine, and should avoid frequent contact with the general public but can interact superficially with coworkers.  (Tr. 97-98, 115-17).

In addition to Drs. Nelson, Zeune, and Tishler's findings that plaintiff's depression and borderline intellectual functioning were "severe" medically determinable impairments, the records of plaintiff's treating physician, Dr. Welch, a physician at the University of Cincinnati Medical Center, also support a finding of a severe mental impairment.  Dr. Welch treated plaintiff's depression with anti-depressant medication, including celexa and bupropion, beginning in April 2018.  (Tr. 668-70, 687).  Over one year later, on August 23, 2019, Dr. Welch reported that plaintiff's depression "remain[ed] elevated."  (Tr. 700).  Dr. Welch increased plaintiff's dosage of bupropion from 150 mg to 200 mg twice a day and stated he would "consider a referral to psychiatry if no improvement."  (Tr. 701).

Despite the medical opinions from four doctors indicating that plaintiff had severe mental health impairments, the ALJ focused on sporadic treatment notes "incidental to his physical impairments [that] showed no ongoing complaints of depression/anxiety, as well as a normal mood and affect."  (Tr. 20, citing Exhibits 4F and 7F).  These exhibits do not substantially support the ALJ's conclusion of a non-severe mental health impairment when the record is viewed as a whole.  Exhibit 4F consists of plaintiff's (1) May 31, 2017 emergency department visit for back pain and right knee pain and (2) new patient visit/consultation with Jeffrey Holtz, PA, on June 16, 2017 for a follow-up evaluation of plaintiff's low back pain.  (Tr. 384, 420). Exhibit 7F consists of  (1) a December 13, 2017 appointment with Dr. Bjorn Jacobson concerning plaintiff's chronic low back pain and (2) a January 2, 2018 follow-up appointment with Dr. Jacobson.  (Tr. 463, 476).  These four treatment notes for conditions unrelated to any mental health concerns do not substantially support the ALJ's conclusion when balanced against the opinions of the four doctors above who specifically assessed plaintiff's mental health functioning.

The ALJ also cited "Exhibits 11F/p85, 12F and 15F/p10" in support of her non-severity finding, and stated that these records likewise showed "evidence of normal behavior, a normal mood, and a normal affect." (Tr. 20). Two of the records cited do not support the ALJ's finding. Exhibit 12F is an April 12, 2019 treatment note from Dr. Welch. (Tr. 664-77). Nowhere in this treatment note, however, is it mentioned that plaintiff had normal behavior, a normal mood, and a normal affect. Rather, plaintiff reported that his "mood [was] like a rollercoaster." (Tr. 668-69). The Commissioner nevertheless argues that plaintiff told Dr. Welch that he stopped taking his medications for 30 days to "see how he did off them," suggesting that his depression was not severe. (Doc. 17 at PAGEID 826, citing Tr. 669). The record shows, however, that plaintiff actually stopped his depression medication for a reason unrelated to his mental health symptoms, i.e., sexual side-effects. (Tr. 668-69).

The ALJ's citation to Exhibit 15/p10 also fails to support her non-severity finding. This citation is the first page of an August 23, 2019 treatment record from Dr. Welch. (Tr. 699). Contrary to the ALJ's finding (Tr. 20), this treatment note does not mention that plaintiff had a normal behavior, a normal mood, and a normal affect. (Tr. 699). Rather, this page of the treatment note contains plaintiff's reports of decreased hearing, leg pain, and a summary of the results from the completion of the functional capacity evaluation. (*Id*.). The remainder of Dr. Welch's progress note from this date, which the ALJ failed to cite, shows Dr. Welch actually increased plaintiff's depression medication and considered a psychiatric referral due to plaintiff's increased symptoms.

Finally, in finding that plaintiff's mental impairments were not severe, the ALJ noted that plaintiff "evidently returned to work." (Tr. 20). However, "work experience" should not be considered in determining whether an impairment is severe at Step Two of the sequential

evaluation process. 20 C.F.R. § 404.1520(c) ("If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. *We will not consider your age, education, and work experience*.") (emphasis added).

Based on the foregoing, substantial evidence does not support the ALJ's determination that plaintiff's depression and borderline intellectual functioning impairments were not severe. In finding that plaintiff's mental impairments were not severe, the ALJ rejected the opinions of every doctor who assessed plaintiff's mental health condition, including two state agency psychological consultants, who are considered "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." *Bowman v. Comm'r of Soc. Sec.*, 683 F. App'x 367, 375 (6th Cir. 2017) (citations omitted). Instead, the ALJ relied on selected citations from minimal treatment records in reaching her conclusion. The ALJ's finding that plaintiff did not have a severe mental health impairment is not supported by substantial evidence.

While the Sixth Circuit has explained that the failure to find a particular severe impairment at step two of the sequential evaluation process does not constitute reversible error if an ALJ finds at least one severe impairment and considers a plaintiff's other impairments in assessing the RFC, *see Maziarz*, 837 F.2d at 244, this case is distinguishable. Here, the ALJ failed to assess *any* limitations associated with plaintiff's severe mental health impairments analyzed above. That is, there is no evidence that the ALJ considered plaintiff's depression and borderline intellectual functioning impairments in determining plaintiff's RFC. Thus, the ALJ's failure to include plaintiff's mental impairments in the list of plaintiff's severe impairments constitutes reversible error. *See Winn*, 615 F. App'x at 326 (holding the ALJ's failure to find

particular severe mental impairments at Step Two of the sequential evaluation process was reversible error because the ALJ "did not consider [plaintiff's] mental impairments in a meaningful way" when assessing plaintiff's RFC). *See also* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

Accordingly, plaintiff's first assignment of error is sustained, and this matter is reversed and remanded for further proceedings. On remand, the ALJ is instructed to re-weigh the evidence as to all of plaintiff's severe impairments and reassess plaintiff's RFC accordingly.

### 2. The ALJ's evaluation of the opinion evidence of record

In his second assignment of error, plaintiff argues the ALJ failed to properly evaluate and weigh the opinion of Dr. Welch, plaintiff's treating physician. (Doc. 14 at PAGEID 792-95).

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight.[4] Under the treating physician rule, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. . . ." *Rogers*, 486 F.3d at 242; *Wilson*, 378 F.3d at 544. Treating physicians are generally recognized as "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." *Rogers*, 486 F.3d at 242.

A treating source's medical opinion must be given controlling weight if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. §

---

[4] 20 C.F.R. § 416.927, which sets out the treating physician rule, has been amended for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 416.920c. This amendment does not apply to plaintiff's claims, which he filed on March 10, 2017. (Tr. 16).

416.927(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "[I]n all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4) ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").

If a treating source's medical opinion is not entitled to controlling weight, the ALJ must apply the following factors in determining what weight to give the opinion: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544. *See also Blakley*, 581 F.3d at 408 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4) ("Treating source medical opinions [that are not accorded controlling weight] are still entitled to deference and must be weighed using all of the factors provided in" 20 C.F.R. § 416.927(c)).

In addition, an ALJ must "give good reasons in [the] notice of determination or decision for the weight [given to the claimant's] treating source's medical opinion." 20 C.F.R. § 416.927(c)(2). The ALJ's reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). This requirement serves a two-fold purpose: (1) it helps a claimant to understand the disposition of h[er] case, especially "where a claimant knows that h[er] physician has deemed h[er] disabled,"

and (2) it "permits meaningful review of the ALJ's application of the [treating-source] rule." *Wilson*, 378 F.3d at 544.

The classification of a medical source is a question of law which the Court reviews de novo. *Blakley*, 581 F.3d at 407 (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). Pursuant to 20 C.F.R. § 416.927(a)(2), a physician qualifies as a "treating source" if the physician sees the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s)." A physician seen infrequently can be a treating source "if the nature and frequency of the treatment or evaluation is typical for [the] condition(s)." *Id*. To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant. *Id*.; *Blakley*, 581 F.3d at 407. Whether the source of a medical opinion is a "treating source" requires a fact-specific inquiry. *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 416 (6th Cir. 2006). There is no set number of times a patient must be seen by a single physician or facility for that doctor or facility to be considered a "treating source." *Id*.; *Kornecky v. Comm'r of Soc. Sec.*, No. 04-2171, 167 F. App'x 496, 506 (6th Cir. Feb. 9, 2006) ("[T]he relevant inquiry is . . . whether [the claimant] had the ongoing relationship with [the physician] at the time he rendered his opinion[.]").

The ALJ gave "little weight" to "the medical source statement completed by Dr. Welch in June of 2019." (Tr. 26). The ALJ stated that Dr. Welch "could not provide a reasonably reliable assessment of function for the entire period at issue" because Dr. Welch "examined the claimant just twice before rendering his opinion." (*Id*.). Second, the ALJ found that Dr. Welch's assessment was inconsistent with the "benign objective evidence of record." (*Id*.).

Plaintiff initially argues that the ALJ failed to weigh Dr. Welch's opinion in accordance with 20 C.F.R. § 416.927(c) and did not assess plaintiff's treating physician's opinion for

13

controlling weight.  (Doc. 14 at PAGEID 793-94).  Plaintiff further suggests that the ALJ may

not have recognized Dr. Welch as a treating physician given the ALJ never used the term

"treating source."  Plaintiff also takes issue with the ALJ's factual finding that Dr. Welch

examined plaintiff only two times, when in fact he examined plaintiff three times and, as a

resident at the University of Cincinnati Medical Center, had access to all of plaintiff's previous

treatment records at that facility in rendering his opinion.

The Commissioner argues "it is evident from the decision that the ALJ believed that this

opinion merited little weight, and therefore not controlling weight," and that "Dr. Welch could

not provide a reliable assessment of Plaintiff's functional limitation for the entire period under

review."  (Doc. 17 at PAGEID 821, citing Tr. 26-27).

In this case, the Court cannot determine from the ALJ's decision whether she classified

Dr. Welch as a "treating source" or a "nontreating source."  The ALJ's decision does not refer to

Dr. Welch as a "treating physician," nor does the ALJ expressly address whether Dr. Welch's

medical opinion was entitled to controlling weight under the factors set forth in 20 C.F.R. §

416.927(c)(2).  In addition, the ALJ did not apply the factors set forth in section 416.927(c)(2)(i),

(c)(2)(ii), and (c)(3)-(6) in determining to give Dr. Welch's treating physician opinion only "little

weight."  (Tr. 26-27).

Moreover, the ALJ erred when she stated that Dr. Welch examined plaintiff on only two

occasions and "could not provide a reasonably reliable assessment of function for the entire

period at issue."  (Tr. 26).  In fact, the record shows that Dr. Welch examined plaintiff three

times before rendering his opinion: (1) November 14, 2018 (Tr. 572), (2) April 12, 2019 (Tr.

668-69), and June 14, 2019 (Tr. 684).  In addition, the record demonstrates that plaintiff had an

on-going treatment relationship with Dr. Welch, one of plaintiff's primary care physicians at the

University of Cincinnati Medical Center, who had access to all of plaintiff's previous treatment records at that facility in rendering his opinion. Accordingly, Dr. Welch was one of plaintiff's treating physicians, and the ALJ was therefore required to evaluate Dr. Welch's opinion under the treating physician rule.

As a treating physician, Dr. Welch's opinion "should have been given controlling weight absent justifiable reasons—made on the record—for discounting th[at] opinion[]." *Blakley*, 581 F.3d at 408 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4-5). Even if Dr. Welch's opinion was not entitled to controlling weight, it was incumbent upon the ALJ to give deference to the opinion of the treating physician and weigh Dr. Welch's opinion "using all of the factors provided in 20 C.F.R. § [] 416.927." *Blakley*, 581 F.3d at 408.

Though there are instances where such "procedural violation[s] may constitute harmless error, such as when 'a treating source's opinion is so patently deficient that the Commissioner could not possibility credit it' or where the Commissioner 'has met the goal of . . . the procedural safeguard of reasons[,]'" this is not one of them. *Fisk*, 253 F. App'x at 586 (quoting *Wilson*, 378 F.3d at 547). The Court is unable to engage in "meaningful review" of the ALJ's decision, *Wilson*, 378 F.3d at 544, because it is not "sufficiently specific to make clear" to the Court that the ALJ considered Dr. Welch's opinion in accordance with the treating physician rule and applicable regulations. SSR 96-2p, 1996 WL 374188, at *5. The Court cannot say that Dr. Welch's opinion was "so patently deficient that the Commissioner could not possibly credit it." *Wilson*, 378 F.3d at 547.

Accordingly, in addition to the reasons articulated in sustaining plaintiff's first assignment of error, this matter is also reversed and remanded for a re-weighing of Dr. Welch's

opinion in accordance with the treating physician rule and the factors set forth in 20 C.F.R. § 416.927(c).

## IT IS THEREFORE ORDERED THAT:

Based on the foregoing, plaintiff's Statement of Errors (Doc. 14) is **SUSTAINED**, and the Commissioner's non-disability finding is **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS** consistent with this Order.

Date: __3/23/2022__

Karen L. Litkovitz
Chief United States Magistrate Judge

16